## William Rohn v. Ida Rohn, admx.

### Gen. No. 11,674.

1. EXECUTOR DE SON TORT—*when, liable for loss resulting to estate.* Where an executor *de son tort* through negligence causes an estate owning certain securities to lose the amount thereof through non-collection at maturity, he is liable to such estate for such loss.

2. EXECUTOR DE SON TORT—*basis of liability for loss sustained by estate.* The basis of such liability is not the intermeddling but the negligence, and another executor *de son tort* cannot be held to have participated in such loss unless such other executor *de son tort* has likewise participated in the negligence which caused the loss.

3. RES JUDICATA—*when question of negligence is.* Where an executor *de son tort* has been sued by the administratrix for negligence in causing the loss of certain securities to the estate owning the same, a recovery in such action renders the question of the negligence of such executor *de son tort res judicata* in a chancery proceeding subsequently instituted by such executor to prevent the enforcement of such judgment, notwithstanding the plaintiff in the action at law sued in her official capacity and in the chancery suit is sued both as an individual and in her official capacity.

4. RES JUDICATA—*when question of fact is, notwithstanding difference of parties.* When in a court of competent jurisdiction a given question of fact must necessarily be decided under the issues framed in a cause, and it is so decided, the decision becomes *res judicata* and controlling in any other cause, as between parties who had the right and opportunity to prosecute and defend, examine and cross-examine in the previous case, even though other parties, or the same parties in other capacities, may also be involved.

5. EQUITABLE ESTOPPEL—*when, may arise to prevent enforcement of judgment.* Where a judgment has been obtained by an administratrix against an executor *de son tort*, an equitable estoppel from claiming the right to enforce such judgment to her own individual advantage may arise against such administratrix, if it is made to appear that she

herself was culpably negligent in the matter on account of which the loss, which formed the basis of such judgment, was sustained by the estate.

Bill to restrain collection of judgment, etc. Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in this court at the March term, 1904. Affirmed. Opinion filed January 5, 1905.

Statement by the Court. This is an appeal from a decree in chancery in the Superior Court of Cook county, dismissing appellant's bill. The bill was brought in that court by the appellant against Ida Rohn individually and as administratrix of the estate of William Rohn, Jr., deceased, and against William Rohn and Clara Rohn, children of said William Rohn, Jr. Its prayer is partly that said Ida Rohn may be restrained by injunction from enforcing a judgment for $1,762.50, which as administratrix of the estate of William Rohn, Jr., she had obtained at law against the appellant in the Superior Court, and which had been affirmed by the Appellate Court and by the Supreme Court. It also prays that the Superior Court may take charge of the probate, settlement and distribution of the estate of William Rohn, Jr., deceased, and in such settlement and distribution charge the amount of said judgment, interest and costs against the distributive share which Ida Rohn individually is found entitled to.

The appellant, complainant in said bill, offers in the said bill to pay the amount of said judgment into court, but prays that it may be returned to him either by the court, or the administratrix under order of the court, in case it is not in the course of administration of the estate needed for the payment of something chargeable to said estate, other than such distributive share of said Ida Rohn.

The allegations of said bill which purport to call for this relief, are substantially these: That William Rohn, Jr., was the son of appellant, who is seventy-two years of age, and illiterate; that William Rohn, Jr., died intestate on October 10, 1893, pending some negotiations he was carrying on with his partner, one George Wildner, for sale of a

partnership interest in his business to said partner; that before his death he had agreed with his partner on the price; that he stated before his death that his estate would aggregate $11,000, and he desired his wife to have $5,000 and each of his two children $3,000; that he had prepared a bill of sale to his partnership interest to Wildner, expressing a consideration of $8,500, which bill of sale he placed in the hands of his wife, Ida Rohn, with instructions to deliver it to Wildner on the latter's turning over $6,000 in cash or securities, and giving one unsecured note for $1,000, payable in two years, and one for $1,500, payable in three years; that William Rohn, Jr., then died; that Ida Rohn, his widow, after his death determined to carry out said sale previously agreed on, and thereupon requested the appellant to assist her in carrying out said determination; that in compliance with her request, appellant received from her the bill of sale and delivered it to Wildner and received $6,000 in securities and one note of Wildner's for $1,000 payable in two years, and another for $1,500 due in three years, both payable to the order of Ida Rohn; that he reported this to Ida Rohn, and gave to her a small account book containing a description of these securities and notes, and as he made collections of said securities, entered the same in this account book; that at Ida Rohn's request he went with her to a common friend, Mr. Adolf Heile; that there Ida Rohn requested Heile to formulate a plan that would entrust the custody of the property to the appellant, and effectuate the distribution of it in accordance with her deceased husband's wishes, so that she should have $5,000 and her children each $3,000; that in compliance with said request said Heile suggested and prepared a writing which recited that appellant had received said $11,000 in notes partly secured and partly unsecured, and that he held them in trust for Ida Rohn and the two children, in said proportions, and was to collect them from time to time, and pay the interest to Ida Rohn during the minority of the children, and turn over to her, in notes, $5,000 as her share, on demand, and turn over the children's share when they

arrived at age, and to reinvest the proceeds collected from time to time, and to direct his executors and heirs to turn over the securities of said minors he might have at his death to some other person to be named as trustee by Ida Rohn, and that it was expressly understood that said appellant's services were to be entirely gratuitous; that Ida Rohn then requested appellant to execute said writing, which he did, and delivered a duplicate copy to her; that all of said parties believed at the time that the arrangement was binding and legal, but that appellant has since learned that it was invalid as against the children; that appellant entered into said arrangement, executed said writing and undertook the care of said property in good faith, without compensation, at the express request of Ida Rohn; that for some years he kept and cared for the property, collecting interest and turning it over to Ida Rohn and her children, and collecting the principal and reinvesting the proceeds; that prior to its maturity said unsecured $1,000 note to Ida Rohn's order was paid; that when said $1,500 note payable to Ida Rohn's order became due, on October 17, 1896, he presented the same to Wildner and demanded payment; that Wildner failed to pay it, but that he believed Wildner was solvent and intended to pay the note in a few days, as he promised to do, and that appellant did not immediately institute suit, nor grant any extension of time; that he did not understand that any legal duty rested on him to do so, nor that Ida Rohn expected him to do so; that shortly after, he and Ida Rohn learned that Wildner had become insolvent and suit would be unavailing; that Ida Rohn some time afterward sued out letters of administration in the Probate Court on said estate and made demand upon appellant to turn over to her, as administratrix, all of said property, and charged that the arrangement by appellant and his acceptance of the custody of said property constituted appellant an executor *de son tort* of said estate; that on January 19, 1899, as administratrix, Ida Rohn instituted a suit at law against appellant in the Superior Court of Cook county, charging in the declaration

that appellant had intermeddled with and had acted as executor *de son tort* of the estate of William Rohn, Jr., deceased, and had been guilty of negligence in the non-collection of the $1,500 Wildner note; that appellant pleaded the general issue in said cause; that upon the trial judgment was entered against appellant for $1,762.50, which judgment was affirmed by the Appellate and Supreme Courts respectively upon appeal to them; that said judgment is in full force, and Ida Rohn threatens to have it executed, but that it would be contrary to equity and good conscience, as between appellant and Ida Rohn, as one of the distributees of said estate, for appellant to be compelled to pay said judgment; that though under the strict technical rules of the common law, appellant's undertaking to assume the care of said property constituted him an executor *de son tort* as between him and the estate of William Rohn, Jr., yet as between him and Ida Rohn individually, as the arrangement was made at her sole instance and for her benefit, the loss should fall upon her and not upon him.

William and Clara Rohn answered said bill by a guardian *ad litem*, submitting their rights to the court, and Ida Rohn as an individual and as administratrix of the estate of William Rohn, Jr., deceased, after filing and withdrawing a general demurrer to said bill, answered it in substance as follows:

She admits the various allegations of fact made therein, except that she requested appellant to aid her in carrying her husband's agreement with Wildner into effect. As to this she avers that appellant of his own motion came to her and solicited her to carry said arrangement into effect, and to deliver to him the bill of sale involved, that he might deliver it to Wildner, and that he told her he would see to it that the money of said estate was secured; that thereupon she delivered said bill of sale to him, and he delivered it to Wildner, and took the securities and notes described in the bill from Wildner; that she never had the $1,500 note in question in this litigation in her possession or control.

In her answer she sets up the declaration of trust drawn by Heile verbatim as follows:

Rohn v. Rohn.

"1, William Rohn, Sr., of Chicago, Cook County, Illinois, do hereby acknowledge that I have received from my son, William Rohn, Jr., lately deceased, notes partly secured by mortgage and partly unsecured, of the principal sum amounting to Eleven Thousand Dollars ($11,000), and I hereby declare that I hold the said securities in trust for the following named persons and in the following named amounts, to-wit: The sum of Five Thousand Dollars ($5,000) for Ida Rohn, the widow of the late William Rohn, Jr.; the sum of Three Thousand Dollars ($3,000) for William Rohn, son of said William Rohn, Jr., and Three Thousand Dollars ($3,000) for Clara Rohn, the daughter of said William Rohn, Jr., both of said children being now minors, and I hereby agree to collect the interest on the said sum of Five Thousand Dollars ($5,000) and to pay the same to the said Ida Rohn from time to time, and also to turn over to her notes for said principal sum of Five Thousand Dollars ($5,000) at any time she may demand the same; and I further agree to collect the interest on the remaining Six Thousand Dollars ($6,000) and pay the same over to the said Ida Rohn for and during the minority of the said children, and to turn over the principal of said sum of Three Thousand Dollars ($3,000) to each of the said children when they respectively shall become of full age; and I further agree to collect said notes from time to time as they may become due, and re-invest the proceeds according to my best judgment. In case of my death I hereby direct my executor, administrator and heirs, or either of them, to turn over the securities which I may then hold for said minor children, to some other person named as such trustee by said Ida Rohn.

In witness whereof, I have hereunto set my hand and seal this 16th day of October, 1893.

W. ROHN.    [SEAL].

Witnesses:
    ADOLF HEILE,
    RUDOLPH ROHN."

She further avers in her answer that the $1,500 note of Wildner in question was a judgment note; that appellant did not report to her that Wildner had neglected to pay said note; that Wildner did not fail until, on November 21, 1896, a judgment was rendered against him upon a judgment note, and his assets were then taken under a chattel mortgage held by Rudolph Rohn, a brother of appellant,

with whom appellant was and for many years had been in
confidential relations, said Rudolph Rohn then paying off
said judgment to protect his mortgage; that appellant did
not inform her of his failure to collect said note until De-
cember, 1896; when he told her that the money had been
lost to the estate; that she at no time had anything to do
with the collection of said note, but at all times relied upon
complainant to be diligent under said declaration of trust.
She further sets up in her answer the several counts of the
declaration at law against the appellant, in which she re-
covered judgment, and asserts that in waiting until the
affirmance of said judgment by the Supreme Court before
bringing his bill in chancery, appellant has been guilty of
laches, and if he has any right of action against her indi-
vidually, he has a full and adequate remedy at law.

A general replication was filed by appellant to this an-
swer, and the cause was heard upon said bill, answers and
replication by the chancellor in the Superior Court, who
entered a decree finding that the equities were with the
defendants; that after the death of William Rohn, Jr., ap-
pellant, on his own motion, intermeddled with the affairs
of the estate of William Rohn, Jr., deceased, and acted as
executor de son tort of said estate, and while so acting was
guilty of negligence in the collection of the $1,500 note
described in the bill, and through such negligence said
note was lost to the estate of William Rohn, Jr.; that the
administratrix of said estate in an action on the case recov-
ered judgment against appellant on May 26, 1900, in the
Superior Court for $1,762.50 and costs of suit resulting to
said estate through said negligence; that appellant assumed
to act as executor de son tort of said estate of his own
motion in pursuance of a request of said deceased, and that
Ida Rohn did not request or solicit complainant to act as
such executor de son tort—and dismissing the bill for want
of equity at complainant's costs.

From this decree William Rohn appealed to this court,
and assigns for error here, the exclusion of proper evidence,
the admission of improper evidence, and that the court

erred in finding that Ida Rohn did not request or solicit appellant to execute said declaration of trust and to assume the care and custody of the securities belonging to said estate and the collection thereof; and erred also in not granting to appellant the injunction prayed for against the execution of the judgment at law, and in not entering a decree in accordance with the prayer of appellant's bill, instead of dismissing said bill for want of equity.

JOHN S. HUEY and LOUIS A. HEILE, for appellant.

HENRY P. HEIZER, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The appellant in this case has a judgment at law against him in favor of Ida Rohn, administratrix of the estate of William Rohn, Jr., deceased, which he undoubtedly with entire sincerity believes to be unjust, and the payment of which he is very desirous to escape. But we think that all hopeful paths to this end were tried and found closed to him before he took this appeal.

It is apparent from the statement of facts preceding this opinion that he could not have been held liable in the suit at law in the Superior Court, unless the jury in that court had found, and the court had confirmed the finding, that he was guilty of negligence in the matter of the collection of the Wildner note at maturity, which had resulted in the loss to the estate of William Rohn, Jr., of the entire amount of it. It was not that he was executor *de son tort*, which proximately caused that liability; it was that, being executor *de son tort*, he was negligent in the duties which he took upon himself; grossly negligent, perhaps, for gross negligence is generally nothing—as has been sometimes remarked—but negligence with an epithet.

The Appellate Court in affirming the judgment, said : " We think the evidence such that the jury had a right to find that appellant did not, in respect to the collection of this note, exercise such diligence as prudent men ordinarily bestow upon their affairs." This expresses the degree of

negligence which was necessary to make the defendant liable to the plaintiff in that case, and it would not render it greater to call it gross, nor less to withhold that description from it.    The Supreme Court, when it came to pass upon the case, said : " The judgment of the Appellate Court must be treated by us as settling the fact that defendant was guilty of negligence in not exercising such diligence for the collection of the note as a man of ordinary prudence would have exercised in his own affairs—and also that the loss and damage were equal to the damages assessed."    In this direction, therefore, the path out from the liability, which appellant finds burdensome, was finally closed by these adjudications.

It is *res judicata* that he was negligent enough in respect to the collection of this note to render him liable to the estate of William Rohn, Jr., for the loss to that estate entailed by it.    It is true that the suit at law in which these adjudications were made was brought by Ida Rohn as administratrix of the estate of William Rohn, Jr., while in this suit at bar she is made a party defendant individually as well as such administratrix, and substantial relief is claimed against her individually and personally.    But the application of the doctrine of *res judicata* is not entirely confined to suits between the same persons only, litigating in precisely the same capacities.    When in a court of competent jurisdiction a given question of fact must necessarily be decided under the issues framed in a cause, and it is so decided, the decision becomes *res judicata* and controlling in any other cause, as between parties who had the right and opportunity to prosecute and defend, examine and cross-examine in the previous case, even though other parties, or the same parties in other capacities, may be also involved.    Wells on Res Adjudicata, sec. 19.    In the case at law under consideration, appellant had such right and opportunity to defend against the allegation of the plaintiff's declaration that he " by due diligence might have collected said money, but negligently did not collect the same."    He failed to make good that defense, and therefore we must

begin the consideration of this case on the basis that there has been a conclusive adjudication of negligence sufficient to make him liable to the estate of William Rohn, Jr., in his capacity of executor *de son tort.*

But appellant contends, and has alleged in the bill in this case, that in favor of Ida Rohn in her individual character, he is under no liability that ought to be enforced against him, because, first, it was at her solicitation and request that he put himself into the position which made him an executor *de son tort,* and that he should as to her individually be treated, therefore, as a bailee without reward only, and subjected to no liability except that which springs from bad faith, which has not been adjudicated against him; and, secondly, that she cooperated with him in his tortious executorship, and was herself so negligent in the matter of the collection of the note in question as to prevent her from benefitting at his expense by a wrong in which she was equally, or at all events jointly, culpable. On these grounds, as we understand appellant's contention, it is urged that Ida Rohn individually is equitably estopped from claiming the right to enforce to her own personal advantage the judgment which she holds as administratrix against him. On this ground this bill was brought, and the court asked to take charge of the administration of the estate and so administer it and deal with the judgment in question as to preserve its benefit to the other persons interested in the estate of William Rohn, Jr., but to deny such benefit to her. We think there is no doubt of the right of a court of chancery to do this if a proper case were made. It is quite clear that it might well be, under a hypothetical state of facts, that an equitable estoppel of the nature indicated would be worked, and that the court should give it due effect. This, the Supreme Court in its opinion affirming the judgment plainly recognized. " If," it says, treating of an instruction refused by the trial court, " facts existed requiring that as between defendant and the widow, the loss ought to be taken from her distributive share of the estate, it cannot be done in this suit, and such relief must be sought

in a court of equity." But it proceeds: "Whether she as an individual entitled to a distributive share of the estate *was in any manner responsible for his failure to collect the notes*, is not a question in *this* case, and there was no error in refusing the instructions asked by defendant."

But it is plain that under the circumstances of this case, before appellant can establish this equitable estoppel against Ida Rohn on the ground pointed out by the Supreme Court, that she was in some manner responsible for his failure to collect the note in question, he must assume and carry the burden of proving it. Neither " *allegata* " nor " *probata* " in this cause, outside of the claim that she induced him to become executor " *de son tort* " of the estate, which we will discuss further on, seems to us to meet this requirement. At all events, even if there can be said to be implied in the various allegations of the appellant's bill a claim that Ida Rohn was in any way a participant in the negligence in collection of the note in question which has made him liable to the estate, there certainly is nothing in the evidence heard by the chancellor below which can be said to establish it. The appellant testified to nothing about it, and Ida Rohn testified that she never had the note in her possession, that she did not know she was the payee of it, that she did not know even that it was not secured, and first learned of it after Wildner failed and appellant came and said to her that her money was lost. Nor is there any other testimony about it. It is indeed said in appellant's argument that the declaration of trust recited that the two Wildner notes were unsecured, but this is a mistake. It recites simply that of $11,000 in notes received, some were secured and some unsecured. It is idle under this state of the evidence to say that Ida Rohn is estopped from claiming, through any action of hers relating to the collection of this note, the benefit of appellant's adjudged liability to the estate.

But it is claimed and an attempt was made by appellant to prove that Ida Rohn requested and solicited him to act as executor *de son tort*, and is thereby estopped from claim-

Rohn v. Rohn.

ing the benefit of a liability which resulted therefrom. It seems hardly worth while to discuss at length the soundness of the proposition of law involved in this contention, for the alleged fact on which it rests was specifically found by the chancellor below not to exist, and even apart from the consideration that should be given to the chancellor's seeing and hearing the witnesses, we think the finding plainly justified. It did appear that after appellant had taken possession of the proceeds of the estate, Ida Rohn requested there should be made and that she obtained a declaration of trust by the appellant, but that is a very different thing from requesting and soliciting that the appellant should take possession of the assets of the estate or their proceeds and administer them. So, as we said above, it seems to us that before this appeal was taken, the escape from ultimate liability on this judgment was foreclosed to appellant. But we are not of the opinion that even if appellant had proved the request and solicitation alleged in his bill, he would have been entitled to the decree prayed for, or that an equitable estoppel would have been worked against Ida Rohn. The foundation of his liability was his negligence in conducting the administration of the estate which he took into his possession, not its mere taking. That Ida Rohn also intermeddled with it and became so far an executor *de son tort*, is beside the question. It was not in anything that she did or neglected to do that the liability arose. Despite the appellant's assumption of powers outside legal authority, he would not have been liable had he not been negligent in their execution.

And even if the view could be taken that Ida Rohn's "request and solicitation" made him, as to her, a mandatary, or bailee without hire, and not an executor *de son tort* at all— a view which, even if the request and solicitation had been proved we could not assent to—would it necessarily follow that there would be no liability, so far as she was concerned. He specifically undertook the collection of the notes, and is conclusively adjudged to have been negligent and to have failed in that duty taken upon himself. Under

these circumstances, neither the fact that he so undertook
it without compensation, or at the solicitation of Ida Rohn,
would, we think, relieve him from liability for loss to her
resulting from his neglect to execute faithfully the duty
thus voluntarily assumed.   Walden v. Karr, 88 Ill. 49.

The exclusion of the offered evidence which is complained
of, we do not think constituted reversible error.   Such evi-
dence seems to us, as it did to the trial court, to be imma-
terial and to throw no light on the vital questions in the
cause.

The judgment of the Superior Court is affirmed.

*Affirmed.*